UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 22-81171 |
| | ) | |
| William T. Geheren, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Lynch |
| | ) | |

MEMORANDUM DECISION

On April 6, 2023, this Court confirmed the Debtor's amended chapter 13 plan of reorganization. The plan as confirmed provides that Mr. Geheren will cure a pre-petition arrearage and maintain current contractual payments for the mortgage loan over the course of the 60-month plan.  (ECF No. 26) US Bank Trust National Association ("US Bank") now seeks relief from the automatic stay based primarily upon the Debtor's failure to comply with the provisions of the plan regarding the Debtor's indebtedness on his homestead mortgage. (ECF No. 38, "Stay Relief Motion") In response, the Debtor moves to modify his plan, proposing to address the default on the mortgage loan by changing the provisions for the maintenance of payments and cure of default, and establishing a twelve-month period to "actively market" and bring a motion for the sale of the mortgaged property.  (ECF No. 43, "Plan Modification Motion")

During the following weeks the parties attempted to reach a resolution.  They agreed to the combined adjudication of the motions, and consented to extending the time for hearing and ruling on the motions.  Upon review of the evidence presented

and argument (and stipulations) of the parties, following the evidentiary hearing the Court orally ruled that the proposed plan modification involves an unconsented to and impermissible material modification of the secured creditor's rights in the homestead property. The Court further determined that the weight of the evidence established "cause" for relief under section 362(d) of the Bankruptcy Code. Accordingly, the Plan Modification Motion will be denied and the proposed modification disallowed. The Stay Relief Motion will be granted. This Memorandum Decision further discusses the analysis and rulings of the Court.

## JURISDICTION

The pending motions involve termination of the automatic stay imposed by section 362 of the Bankruptcy Code and modification of a chapter 13 plan under section 1329 of the Bankruptcy Code. Both matters arise under title 11 and are arising in a case under title 11 and are, therefore, within the jurisdiction of the district court as provided by 28 U.S.C. § 1334(b). The matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (G), (L) and (O). This court has jurisdiction to decide the matter pursuant to the referral of all bankruptcy matters by the United States District Court for the Northern District of Illinois pursuant to its Internal Operating Procedure 15(a) and 28 U.S.C. § 157(a). The matter is also within the Court's constitutional authority to enter final orders. *See, e.g., In re D/C Distribution, LLC*, 617 B.R. 600, 605 (Bankr. N.D. Ill. 2020).

## FACTUAL AND PROCEDURAL BACKGROUND

On October 27, 2022, William Geheren commenced this chapter 13 case. He filed schedules with his petition listing his residence to be a property in Huntley, Illinois (the "homestead Property"). His schedules describe the value of the homestead Property and his interest in it to be $350,000, and state that it is owned in tenancy by entirety and subject to a mortgage originally held by Shellpoint Mortgage Servicing of $184,402.00. US Bank Trust National Association claims to hold the mortgage secured by a lien on the homestead Property not in its individual capacity but solely as owner Trustee for VRMTG Asset Trust.[1] The Debtor does not dispute US Bank's claims to be the fiduciary of the asset trust assigned the homestead Property mortgage. Nor is there any dispute that US Bank enjoys a substantial equity cushion in the Property. Mr. Geheren had commenced a chapter 13 case in 2020 that was dismissed on August 18, 2022. As a result, he timely sought the extension of the automatic stay in this case, which request was granted. (ECF No. 16)

The bank filed a proof of claim for $188,712.60 which claim, it asserts, is fully secured by the homestead Property. It asserts that arrears as of the petition date total $41,544.40, and that the Debtor's loan carries a fixed interest rate of 3.8750%. Attached to the proof of claim is a note that shows a maturity date of May 1, 2033, which is accompanied by a modification agreement extending the maturity date to

---

[1] Serviced by NewRez LLC DBA Shellpoint Mortgage Servicing.

March 1, 2058. The Debtor did not object to the proof of claim and has not otherwise disputed US Bank's alleged claim or security interest in the homestead Property.

Objections to the Debtor's first amended Chapter 13 plan (ECF No. 26) eventually were resolved and the plan was confirmed on April 6. The confirmed plan requires the Debtor to make monthly payments to the Trustee of $965 for 60 months ($57,900 in total).  According to the confirmed plan, the $41,544.40 pre-petition arrearage claim of US Bank will be paid without interest from these payments, in monthly increments of $728.85.[2]  The Debtor will make current mortgage payments directly to US Bank.in monthly installments, estimated to be $1,672.52.[3]  The plan provides that property of the estate is to vest in the Debtor on plan confirmation. The plan opted for the standard plan language of Official Form 113  for the maintenance of payments and cure of default, checking the box providing for the maintenance of payments and cure of default: "[i]f relief from the automatic stay is ordered as to any item of collateral … then, unless otherwise ordered by the court, all payments under this paragraph as to that collateral will cease, and all secured claims based on that collateral will no longer be treated by the plan." (ECF no.  26, section 3.1)

On April 28, 2023, US Bank moved for relief from the automatic stay and co-debtor stay. (Mia Geheren, the Debtor's non-filing spouse, is alleged to have signed

---

[2] The remainder of the payments through the Trustee are to be used to pay a car loan stripped down to the value of the car, Trustee fees, the Debtor's attorney fees and allowed unsecured claims. The confirmed Plan contemplates that Debtor will make direct payments on two educational loans "outside of the chapter 13 plan."

[3] At a post-trial hearing, the attorneys for the respective parties clarified the current installment payment includes payments towards principal, interest and amounts escrowed for property taxes and insurance.

the mortgage but not the note.)  The bank alleges that as of April 12, 2023, the Debtor is "past due" for his installment payments of $1,694.22 each of which were due, respectively, at the beginning of February, March and April, 2023. Its supporting statement asserts that after applying a suspense balance of $1,607.42, and applicable attorney fees and costs, there is a total default amount of $4,713.24.  Hearing on the motion was continued several times at the request of the parties.  At the first of those hearings the Court was informed that Ms. Geheren had died unexpectedly.

The Debtor objected to US Bank's motion and, on June 21, 2023, filed his motion to modify the confirmed plan, as the motion explains, to be a "liquidating plan" to enable Mr. Geheren to sell the homestead Property to satisfy his plan obligations. (Motion to Mod., ¶¶5, 7.)  Stating that he relied on the household income contributed by his non-filing spouse to calculate his household budget, the Plan Modification Motion discloses that with the passing of Ms. Geheren: "the Debtor is unlikely to have sufficient net income moving forward to successfully complete the plan as originally confirmed."  (*Id., ¶5*)

In principal part, the Debtor's motion proposes to suspend for 12 months plan payments for both US Bank post-petition mortgage installments and payments on account of prepetition arrears.  During this time, the Debtor will seek to market and sell the homestead Property. *Id.* at 4. The proposed modification reduces total plan payments to $61 per month for the remainder of the term, and "remov[es] maintenance of payments and cure of default provisions" to US Bank. (*Id.* at 4)  The proposal acknowledges that the Debtor will maintain insurance on the homestead

Property and continue to pay real estate taxes as they come due. (*Id.*)  It further

proposes to modify section 8.1 of the plan with the following:

> (1)  Within 12 months from the entry of this order, the Debtor shall
> have filed. . .  an appropriate motion to authorize the sale of the
> Property.  Such order authorizing the sale of the Property shall at
> minimum provide for a sale price sufficient, net of costs, to pay all
> secured claims against the property in full and sufficient to pay to
> the chapter 13 trustee all amounts, if any, necessary to pay all
> allowed, unsecured claims in full.
> . . . .
>
> (4)  If Debtor fails to timely file a motion to authorize the sale of
> the Property, then the automatic stay shall immediately terminate
> as to those parties holding allowed secured claims against the
> Property;

(*Id.* at 4-6)  While the original Plan Modification Motion did not provide for any

payments to be made to US Bank while the homestead Property is being marketed,

during the evidentiary hearing on the motions the Debtor proposed to make "interest

only" payments to the bank during the 12-month suspension period.  It is undisputed

that the monthly "interest only" payments would be less than the current monthly

contractual payments.

US Bank and the Chapter 13 Trustee each object to the motion to modify.  The

Court held a combined evidentiary hearing on the competing motions on August 3,

2023, at which only the Debtor was called to testify.  The parties agreed to continue

the motions for further joint proceedings and for the written decision of the Court.

## DISCUSSION

**Modification of a Confirmed Plan.**   A confirmed chapter 13 plan may be modified before it completes to:

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; [or] (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan."

11 U.S.C. § 1329(a).   However, "Sections 1322(a), 1322(b), and 1323(c) of [the Bankruptcy Code] and the requirements of section 1325(a) … apply to any modification." 11 U.S.C. § 1329(b).   While section 1329 contains limitations as to the types of modifications permitted, "it does not contain an explicit standard for determining when a modification that is within those limits should be approved." *Germeraad v. Powers*, 826 F.3d 962, 971 (7th Cir. 2016) (citing *In re Witkowski*, 16 F.3d 739, 746 (7th Cir. 1994)).   It "does not require any threshold requirement" or any showing of a "change in circumstances" post-confirmation, but rather the decision "is within the bankruptcy court's discretion." *Witkowski*, 16 F.3d at 748.   A change in the debtor's financial circumstances affecting his ability to repay creditors is a common reason for modification. *Germeraad*, 826 F.3d at 971.

The Plan Modification Motion generally references several decisions from bankruptcy courts outside the circuit which addressed the confirmation of plans proposing to pay secured creditors through the sale of property. (ECF No. 43, §9.)   In its objection, US Bank principally argues that the Debtor's proposed modification of the plan is an impermissible modification of its rights under section 1322(b)(2).

Section 1322(b)(2) authorizes a plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2).  The Supreme Court has found that section 1322 does not authorize proposals to permanently write down the mortgage to the value of the collateral principal residence with respect to the rights of a mortgage-holder in the residence. *Nobelman v. American Sav. Bank*, 508 U.S. 324 (1993).  *Nobelman* concluded that since the Bankruptcy Code does not define the unmodifiable "rights" of the holders of secured claims, they "are reflected in the relevant mortgage instruments, which are enforceable under [state] law." *Id.* at 329. By way of illustration, the Supreme Court noted that such rights

> include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure.

*Id.* However, at least some of these rights may be modified by other provisions of the Bankruptcy Code. As the Court explained, a "lender's power to enforce its rights – and, in particular, its right to foreclose on the property in the event of default – is checked by the Bankruptcy Code's automatic stay provision" and section "1322(b)(5) permits the debtor to cure prepetition defaults on a home mortgage by paying off arrearages over the life of the plan 'notwithstanding' the exception in § 1322(b)(2)." *Id.* at 330.

*Nobelman* discusses the power to cure "prepetition defaults." But the language of section 1322(b)(5), and the cure power found in section 1322(b)(3) refer to the cure of "any default." A number of courts have held that section 1322(b)(5) authorizes cure of post-petition defaults, including in the context of post-confirmation plan modification. As noted by one court, the "majority of courts agree that since § 1322(b)(5) allows the cure of any default, a debtor can modify his plan under § 1329 to cure post confirmation defaults, so long as the curing is done within a reasonable period of time and while current payments are being maintained." *In re Wilson*, 321 B.R. 222, 228 (Bankr. N.D. Ill. 2005) (citing *Green Tree Acceptance. Inc. v. Hoggle*, 12 F. 3rd 1008 (11th Cir. 1994); *Mendoza v. Temple-Inland Mortaaee Corp.*, 111 F. 3rd 1264, 1268 (5th Cir. 1997)).

Recognizing that the terms "cure" and "modify" are not defined in the Bankruptcy Code, the Seventh Circuit has noted that "it is clear that Congress intended 'cure' to mean something different from 'modify'; otherwise, in light of (b)(2), (b)(3) would be superfluous." *In re Clark*, 738 F.2d 869, 871-72 (7th Cir. 1984). In *Clark,* the Court of Appeal found that it was a "cure" and not a "modification" for a plan to provide for de-acceleration of a mortgage by payment over time of the payment default that had triggered the acceleration. The court explained that while ordinarily "the means by which one cures a default is by paying all amounts due and owing," the "'cure' is the end, not the means, and what the term refers to is the restoration of the way things were before the default." *Id.* at 872.

However, the Debtor here seeks not only to cure through future sale proceeds the remaining prepetition default through future sale proceeds, or to additionally cure the existing post petition default. Instead, the Debtor seeks to modify his plan to excuse or extend future contractual payments to the secured creditor. In a recent decision from outside the circuit, a bankruptcy court determined such a proposal to be impermissible. *In re Materne*, 640 B.R. 781 (Bankr. D. Mass. 2022). In that case, the debtor sought confirmation of a chapter 13 plan that proposed to pay the mortgage on sale of the principal residence within 36 months, while providing for "adequate protection payments" less than the contractual payment to be paid to the secured creditor in the interim. The court concluded that the plan as proposed lacking provision for postpetition contractual maintenance payments would impermissibly modify the mortgage, a proposal which in that court's view, would create rather than cure defaults. *Id.* at 797 (citing *Phila. Life Ins. Co. v. Proudfoot (In re Proudfoot)*, 144 B.R. 876, 878 (B.A.P. 9th Cir. 1992); *In re Gavia*, 24 B.R. 573, 575 (B.A.P. 9th Cir. 1982); *In re Newton*, 161 B.R. 207, 217 (Bankr. D. Minn. 1993).[4]

In his motion, the Debtor reminds the Court that other "courts have confirmed plans that call for payment in full of secured creditors from the sale of property," at least "[p]rovided that [the plan] contemplate[s] protections for secured lenders in the event an attempted sale fails to materialize." (ECF No. 43, ¶9.) The first proposition

---

[4] *But see, e.g., In re Dunn*, 399 B.R. 909 (Bankr. W.D. Wash. 2009) (confirming what the court described to be a "Hail Mary" plan containing a sale provision without maintenance payments, but also ruling that the secured creditor was free to pursue its foreclosure rights in the state court upon the confirmation of the plan.). In *Dunn*, the plan provided the secured creditor immediate relief from the automatic stay, which feature was central to the court's determination that the plan did not modify the creditor's rights. In contrast, here, the Debtor has objected to US Bank's request for stay relief.

– that a chapter 13 plan may provide for payment from the sale of property – is relatively uncontroversial. The Bankruptcy Code expressly provides that a plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." 11 U.S.C. § 1322(b)(8). The second proposition is murkier, as the Debtor does not explain what he means by "protections for secured lenders," nor does he discuss any particular Bankruptcy Code provision giving secured lenders a right to protection. He seems to imply generally that a plan providing for sale of property may be confirmed over a secured creditor's objection so long as the plan limits the time for sale. In support, he cites *In re Holliday*, 2012 Bankr. LEXIS 1973, *16-17 (Bankr. D. Mont. May 4, 2012); *In re Milburn*, 2012 Bankr. LEXIS 5253, *5-6 (Bankr. E.D. Ky. Nov. 8, 2012); *In re Mastel*, 2010 Bankr. LEXIS 164, *12-14 (Bankr. D. Mont. January 15, 2010); and *In re Anderson*, 28 B.R. 628, 630-31 (S.D. Ohio 1982). The Debtor describes these cases as confirming chapter 13 plans allowing for sale of property within 1 year, 6 months, and 24 months.

But only one of the cases, *Mastel*, even mentions section 1322(b)(2), and none address the "equal monthly amounts" provision added to section 1325(a)(5)(B) by the 2005 Bankruptcy Amendments. In *Holliday,* the mortgage lender does not appear to have objected at all to the plan. In *Milburn*, the secured creditor argued only that a 48-month sale provision was "inequitable" – the court highlighting that the creditor did "*not* identify the statutory basis for its confirmation objection." 2012 Bankr. LEXIS 5253 at *2-3. Even with such a vague objection, the *Milburn* court ultimately denied confirmation, noting that the only evidence of time necessary to sell the

property was six months. In *Anderson*, the secured creditor objected only on the bases of feasibility and the proper rate of interest, and the court only addressed those issues. In *Mastel*, the court does make a single reference to section 1322(b)(2) in a paragraph header "C. § 1322(b)(2) – "Cure-by-Sale," but includes no discussion of that subsection or the anti-modification provision in that paragraph or elsewhere. At best, the court, citing its own 1997 unpublished opinion, states that it previously held that a "cure-by-sale" provision "may satisfy the confirmation requirements of 11 U.S.C. § 1322(b)(3), (b)(5) & (c)(1)." 2010 Bankr. LEXIS 164 at *22. As discussed above, section 1322(c)(1) does provide that "Notwithstanding subsection (b)(2)," a plan may cure a default on a principal residence mortgage under paragraphs (b)(3) and (5). But also as discussed above, prospectively waving or lowering future scheduled payments is not a "cure" under paragraphs (b)(3) or (5) and *Mastel*'s cursory statement offers no explanation to the contrary.

*Materne* highlights a second fundamental problem with the Debtor's motion: the proposed modification runs afoul of the equal monthly payment requirement in Chapter 13. 11 U.S.C. § 1325(a)(5)(B)(iii)(I). That provision requires for a plan to be confirmed[5] that with respect to each allowed secured claim provided for by the plan, unless the creditor consents or the collateral is surrendered, if "property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts." *Id.*

---

[5] And through incorporation by section 1329(b)(1) for approval of a proposed modification of a confirmed plan.

This court has previously held that section 1325(a)(5)(B)(iii) requires the total monthly payments on a secured "claim — regardless of label and regardless of whether through the trustee or direct — to be in equal amounts unless the creditor consents to different treatment." *In re Miceli*, 587 B.R. 492, 498 (Bankr. N.D. Ill. 2018). Here, the Debtor had been paying US Bank $2,401.37 per month under the confirmed plan. He now seeks to modify his plan to pay US Bank some amount less than that for an unspecified number of months followed by payment of its full remaining claim upon sale of the residence on a motion filed within 12 months. The proposal is not in equal monthly amounts and without US Bank's consent. As such it does not comply with section 1325(a)(5)(B)(iii). This is not to say that the equal monthly amount requirement bars all sale plans or that the Debtor's confirmed plan would prevent the Debtor from selling the homestead Property and paying off the plan early. But section 1325(a)(5)(B)(iii) does not permit the modification to the plan to permit the arrangement which the Debtor now seeks.

**Stay Relief.** US Bank seeks stay relief alleging that the Debtor has missed at least three post-confirmation payments required by the confirmed plan and on that basis. Section 362(d)(1) authorizes relief from the automatic stay on request of a party in interest after notice and a hearing "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d). The movant "has the burden of proof on the issue of the debtor's equity in property" and the opponent Debtor "has the burden of proof on all other issues." 11 U.S.C. §

362(g).  At trial, the Debtor did not dispute that he failed to make all required post-petition payments required by the confirmed plan. Nor did he object to the Court receiving into evidence the creditor's Exhibit 2, the bank's payment history on the loan which shows the Debtor's last payment was $2,100 paid on May 17, 2023 and applied to the past-due payment due March 1, 2023.

This unchallenged payment history supports a finding that the Debtor has failed to make current mortgage payments due the beginning of April, May, June, July and August 2023 — at least five months past due post-petition. Indeed, as the bankruptcy case is only a little more than nine months old, Exhibit 2 shows that the Debtor has missed almost as many post-petition payments as he has paid.  In testimony, the Debtor admitted that he cannot afford to make the payments currently required by his plan without modification. Even with respect to his offer to make interest-only payments while marketing the property for sale, he admitted in his testimony that he did not know if he would be able to afford to pay property taxes while also making interest payments.

Not challenging the secured claim or alleged arrearage, the Debtor's principal response to the stay relief motion appears to be his hope to cure the default if is permitted to modify the plan and if he then sells the house.  But as previously discussed, the Debtor's proposed modification must be disallowed.  Next, the Debtor argues that there is significant equity in the property, a point apparently not in dispute, and as such US Bank's interest in the property is adequately protected — at least for the 12 months he seeks to market and sell the property. Notably, the Debtor

fails to present evidence that he has taken any steps to actually market and sell the homestead Property during the months that have passed since his default, despite his being repeatedly asked about any such activity during the pendency of the motion.

Section 362(d)(1) includes the lack of adequate protection as an example of "cause" for stay relief. 11 U.S.C. § 362(d)(1). But the statute uses the term "including" the lack of adequate protection, highlighting that the list is non-exhaustive, and that lack of adequate protection is just one form of cause. Numerous cases have found a material default in the terms of a confirmed plan to constitute cause for stay relief. *See, e.g. In re Rushani*, 2019 Bankr. LEXIS 493 (Bankr. N.D. Ill. Feb. 15, 2019) ("Courts have found that a debtor's material, unjustified post-confirmation default on the terms of a confirmed Chapter 13 plan may constitute 'cause' for stay relief."). *But see JPMorgan Chase Bank, N.A. v. Wheeler Fin., Inc. (In re Aguirre)*, 565 B.R. 646 (N.D. Ill. 2017) (In Chapter 11 case, finding "erroneous conclusion of law for the bankruptcy court to conclude that the Debtors' default alone was justification to lift the stay" and instead pointing to the factors in *Fernstrom*). In *Fernstrom Storage & Van Co.*, the Seventh Circuit noted that the term "cause" in section 362(d)(1) "has no clear definition and is determined on a case-by-case basis." 938 F.2d 731, 735 (7th Cir. 1991). In determining whether "cause" exists, the court looked to whether:

> a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
> b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
> c) the creditor has a probability of prevailing on the merits.

938 F.2d at 735.

Here, the factors weigh in favor of stay relief. The Debtor suggests that a marketed private of the residence will result in a higher price and payment in full of creditors as well as a potential surplus or greater surplus to the Debtor when compared to an auction sale at judicial foreclosure.  But lifting the stay will not necessarily prevent a marketed sale. It was not shown that a foreclosure sale is imminent.  Indeed, the threat or possibility of foreclosure proceedings may spur the Debtor to take marketing actions more expeditiously than he would have if the Debtor had obtained the 12-month period he requested in his motion to modify. In contrast, maintaining the stay will simply delay the likely result. The Debtor has admitted that he is unable to continue complying with his confirmed plan and has not proposed a permissible modification.  Indeed, stay relief may even improve his prospects. Debtor now admits that he cannot now afford his current plan payments and as such his current plan is not feasible.  By operation of those standard plan provisions adopted in the confirmed plan which address the treatment of US Bank's claims, stay relief will result in that treatment being removed from the plan. As the payments to US Bank are by far the largest portion of the payments to be made under the confirmed plan, removal of these amounts from plan payments might enable him to complete his Chapter 13 plan.

## CONCLUSION

Accordingly, the Debtor's Plan Modification Motion will be denied, and US Bank's Stay Relief Motion will be granted. Separate orders will be entered giving effect to the determinations reached herein.

DATE: October 20, 2023          ENTER:

_____

Thomas M. Lynch
United States Bankruptcy Judge